CHARLES BIERMAN, RELATOR, v. JAMES M. SEYMOUR ET AL. AND JOHN F. SHANLEY ET AL.

Argued November 8, 1900—Decided February 25, 1901.

1. A *mandamus* will issue to the mayor of a city to require him to perform a duty imposed by statute, when the relator is otherwise without remedy.

2. To entitle a relator to a *mandamus* two things must appear— *first*, that he has a legal right to have something done by the party to whom he seeks to have the writ directed, and which has not been done ; *second*, that he has no specific legal remedy to which he can resort to compel the performance of this duty.

3. When by statute it is made a condition precedent to the right of the purchaser at a tax sale under the Martin act to reimbursement for expenses incurred for an abstract of title made to ascertain the owner or mortgagees, or both, of the property purchased, that such fees shall be approved by the mayor, upon his neglect or refusal to act thereon a *mandamus* will issue directing that he proceed to the performance of the duty thus imposed.

4. While the writ will issue directing the mayor to consider with view to approval, which is a statutory duty, it will not direct the amount of expenses which he shall approve as necessarily incurred in securing such search, as that is discretionary and dependent upon facts to be established to his satisfaction.

On *mandamus.* On rule to show cause why *mandamus* should not issue directing the mayor of the city of Newark to certify certain statements of fees for abstracts of title filed under the Martin act, where the property had been sold

by the city of Newark for taxes and the owners thereof had redeemed.

Before Justices VAN SYCKEL and FORT.

For the relator, *James R. Nugent.*

For the mayor, *Herbert Boggs.*

For John F. Shanley et al., *Frederick F. Guild.*

The opinion of the court was delivered by

FORT, J.   This application is for a *mandamus* to direct the mayor of the city of Newark to approve certain items for search fees alleged to have been necessarily incurred by the relator in ascertaining the owners and mortgagees of property purchased by the relator under the Martin act, and which was subsequently redeemed by the owner by paying the moneys into the city treasury, with added interest and costs, pursuant to statute.

The two statutes upon which the relator grounds his application are supplements to the act for the adjustment and settlement of arrearages of taxes in cities, and which several supplements were, respectively, approved April 5th, 1892, and April 21st, 1898.   Section 5 of the first and section 1 of the second supplement are the sections relied upon.   *Pamph. L.* 1892, *p.* 395; *Pamph. L.* 1898, *p.* 420.

The mayor of the city of Newark has neglected or refused to approve certain expenses said to have been necessarily incurred for searching to ascertain who are the owners and mortgagees of certain lands sold for taxes by the city to the relator and redeemed by the respondents, within the time provided by statute.

The relator alleges that in October, 1899, he filed an abstract of the searches made, duly certified, together with a statement of the cost thereof and the number of books examined in making the same, in the office of the city clerk, as required by statute.

In May, 1900, the redemption of the lands which had been sold to the relator was made by the owners, and all the taxes, fees and costs paid to the city treasurer, as required by law. The amount paid included the search fees, of which a statement had been filed with the city clerk as aforesaid. The owners protested against said search fees, and gave notice that the city must not pay the same to the relator with the other moneys paid in redemption.

One of the grounds of protest was that the mayor had not approved them, as required by law. The relator admits this, and alleges that the mayor refuses to do so, notwithstanding a request has been made of him. That the mayor has so refused is undisputed.

On this state of facts, is the relator entitled to the writ?

The point made against the writ is that the approval of the fees by the mayor is a discretionary, and not a ministerial, act, and that he is not bound to approve them.

In so far as this insistment contends that the mayor is not required to approve the amount of fees charged in the statement filed, with the abstract, with the city clerk, we agree; but that the duty to approve some fees, if any are found by the mayor to be due, we do not think is discretionary, but is clearly a ministerial duty with which he is charged by the statute, and this duty, it seems to us, is within the line of his official obligations.

It is well settled that for refusal to perform such a duty imposed by statute, a *mandamus* will go to require a city official to act.

The right to have the fees for abstracts necessarily obtained approved to the extent that they are proper, is a strictly statutory one, and the duty of approval is a duty imposed upon the mayor, and such duty is free from doubt. In such cases, upon refusal to perform the duty by such an officer, the right to the writ arises. *Mech. Pub. Off.*, § 937; *Dill. Mun. Corp.* (1st ed.), § 665; 2 *Id.* (4th ed.), § 828.

Mr. Justice Dalrimple stated the rule as to the right to a *mandamus* against a city official as follows: "To entitle him [the relator] to his remedy, two things must appear—*first,*

that he has a legal right to have something done by the party to whom he seeks to have the writ directed, and which has not been done; *second,* that he has no specific legal remedy to which he can resort to compel the performance of this duty." *Nicholson Pavement Co.* v. *Mayor of Newark,* 6 *Vroom* 396; *Apgar* v. *Trustees,* 5 *Id.* 308; *State* v. *Jacobus,* 2 *Dutcher* 135; *State, Herder, Collector,* v. *Collector of Hunterdon,* 7 *Vroom* 363; *Hugg* v. *Camden,* 10 *Id.* 620, 624; *People* v. *Supervisors of Green,* 12 *Barb.* 217.

That a *mandamus* may be granted to compel the performance of a statutory duty which is imposed upon a municipal officer or body, has been held in this state.

Such as to direct a township committee to assign a road to the overseers. *Anonymous,* 2 *Halst.* 192.

To direct a township committee to cause damages to be assessed for lands taken for a road. *Miller* v. *Township Committee of Bridgewater,* 4 *Zab.* 54; *Minhinnah* v. *Haines,* 5 *Dutcher* 388; *Whitenack* v. *Township of Bernards,* 10 *Vroom* 60.

To direct a city council to open a street laid out in a city. *Cleveland* v. *Common Council of Orange,* 2 *Vroom* 131.

To direct the city authorities to submit a claim to arbitration, as required by statute. *Cleveland* v. *Board of Finance,* 9 *Vroom* 259.

This case last cited also holds that a positive refusal of the officer to perform the duty is not necessary to the issuance of the writ. If there be unreasonable delay or manifest intention not to perform it, it is sufficient.

It is clear in the case before us that the statute makes "the costs and expenses necessarily incurred in ascertaining the owner or owners, mortgagee or mortgagees, owning or having a mortgage upon said lands and real estate, including fees for searching to make such ascertainment," &c., a charge against the property of the taxpayer whose property has been sold for taxes by the city, when said necessary costs and expenses, including such fees for searching, have been approved by the mayor.

This makes it his duty to audit, so to speak, such fees and

determine and approve the same if found a part of such necessary expenses. No other remedy is provided, and in no other way can the purchaser under a tax sale be protected for such expenses as between himself, the city and a redeeming owner or mortgagee. The mayor's approval is a condition precedent to the purchaser's right to reimbursement.

In this case the relator did all that he could. He filed his abstract and statements of fees with the city clerk, as required by law, and took reasonable means to secure the mayor's approval thereof. The mayor evidently purposely neglected or refused to approve the same, or consider the fairness or necessity thereof, the evidence being that the mayor said "he would not approve the search fees for the reason that he knew nothing of such matters."

It is quite evident, possibly for the purpose of securing a legal determination of his duty, that the mayor both neglected and refused to give the matter any consideration. This he cannot legally do. The obligation is upon him, by statute, in a matter within the line of his duty to the city, in the adjustment and settlement of taxes due to the city, and which duty he and he alone is required, by law, to perform. It is also a duty which he owes to the relator, and without it the relator is remediless.

*Mandamus* is the proper procedure for its enforcement.

The writ may issue in accordance herewith.

The relator will be allowed costs.